## Case No. 15,364.

UNITED STATES v. HILL et al.

[1 Brock. 156.][1]

Circuit Court, D. Virginia. May Term, 1809.

GRAND JURIES—PRESENTMENT AND INDICTMENT—POWERS OF DISTRICT COURTS.

1. An individual is presented by the grand jury, for a particular offence, and a bill of indictment for the same offence is sent to the grand jury, by the attorney for the U. S., which they find "A true bill." At a subsequent term of the court, the attorney enters a nolle

---

[1] [Reported by John W. Brockenbrough, Esq.]

prosequi. It seems: That the indictment was but an amendment of the presentment, that the presentment was embodied with the indictment, and perished with it.

2. It has been the practice of the courts in this country, to take no notice of presentments, on which the prosecuting attorney does not think proper to institute proceedings, and upon this principle, a motion to quash a presentment after a nolle prosequi entered, will be overruled.

3. No act of congress confers on the United States' courts, the right to summon grand juries, or describes their powers. The laws of congress have invested the courts of the U. S. with criminal jurisdiction, and since this jurisdiction can only be exercised through the instrumentality of grand juries, the power to direct them results by necessary implication. Hence, the powers of grand juries are co-extensive with, and are limited by, the criminal jurisdiction of the courts of which they are an appendage. Hence, too, a presentment by a grand jury in the circuit court of the U. S., of an offence of which that court has no jurisdiction, is coram non judice, and is no legal foundation for any prosecution, which can only be instituted on the presentment or indictment of a grand jury, to be carried on in another court, unless that court has no right to direct grand juries. But the district courts of the U. S. have that power, as completely as the circuit courts, to the extent of their criminal jurisdiction.

[Cited in U. S. v. Antz, 16 Fed. 122; Clawson v. U. S., 114 U. S. 487, 5 Sup. Ct. 954; Ex parte Wilson, 114 U. S. 425, 5 Sup. Ct. 939.]

[Cited in Heard v. Pierce, 8 Cush. 345; Oshoga v. State, 3 Pin. 59; Territory v. Harding (Mont.) 12 Pac. 754.]

On the 13th day of December, 1808, the grand jury presented John K. Hill and others, in this court, for a violation of the embargo laws of the United States, alleged to have been committed in March, 1808, by carrying the schooner Penelope into the port of St. Bartholomews, beyond the limits of the United States, although cleared from the port of Tappahannock, in Virginia, for the port of Savannah, in Georgia. On the following day, the attorney for the United States sent to the grand jury a bill of indictment, founded upon the said presentment, which they found "A true bill." At the June term, 1809, the attorney for the United States entered a nolle prosequi, as it seems, for want of jurisdiction, as to the whole class of indictments, founded upon presentments for violations of the embargo laws, including the indictment against the defendant Hill. A motion was then made on behalf of the defendant, Hill, to quash the presentment of the grand jury, and a cross motion was made by the attorney for the United States, for an order to certify this presentment to the district court.

MARSHALL, Circuit Justice. I shall not quash the presentment for two reasons. 1st. I am not certain, that the presentment has at this time any legal existence. I am much inclined to the opinion, that the two presentments of the same offence, which were made by the grand jury, the first on their own motion, which was informal, and the second, at the instance of the attorney for the United States, which is precisely the first presentment, corrected in point of form, are to be considered as one and the same act, and that the second is only to be considered as an amendment of the first. If this be correct, the presentment was embodied in the indictment and perished with it. I am, also, much inclined to the opinion, that the idea of a discontinuance, which was suggested at the bar, is correct. 2dly. The usage of this country has been, to pass over, unnoticed, presentments on which the attorney does not think it proper to institute proceedings. This usage is convenient, because it avoids the waste of time, which would often be consumed in the inquiry, whether the court could take jurisdiction of the offence presented. I am not disposed to disturb it, unless strong reasons should require my interposition. Without deciding whether this presentment retains any legal force, I shall not quash it.

A more material question grows out of the motion, for an order to certify this presentment to the district court. This order is not essential to the verification of the presentment. The record, certified by the clerk, would be as authentic as if certified under an order of this court. The motion, therefore, can only be made for the purpose of conveying to the district court, the opinion of this court, that it is the duty of the judge below, to proceed upon the presentment ordered to be certified to him. The order can be required for no other purpose,—indeed, this is the avowed purpose for which it is asked. Consequently, I ought not to make the order, unless it should be my opinion, that the presentment here is a legal foundation for proceedings in the district court. In making this inquiry, I shall, for the present, discharge from my consideration those subsequent events, which appear to me to make it at least doubtful, whether the presentment is at this time in such legal force as to communicate validity to proceedings now to be instituted on it, and shall treat the question as if the presentment had been made during the present term. The order is required by the attorney for the United States, for the purpose of facilitating proceedings in the district court, against certain persons, charged with the violation of the embargo laws, and to obviate the objections drawn from the 7th amendment to the constitution, which ordains, "that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

Without meaning to indicate any opinion on the necessity of a presentment or indictment in this case, I shall inquire whether, if it be necessary, I can transmit this presentment to the district court, as being, under the constitution, a legal commencement of a prosecution to be carried on in that court. It has been truly stated, that no paper, purporting to be a presentment, can,

of slabs or boards, as would be the case if the cutter were composed of only one straight blade. The bed, with the block thereon, is put in motion by an intermittent feed, and the block is advanced under the cutter, at every throw of the feed mechanism, a distance measured by the range at which the feed mechanism is set. The cutter, firmly fastened above to a stock, works up and down with a reciprocating motion as the block passes under it, splitting the block as it descends, and then rising from it, so that it may be carried by the bed a step forward, when the cutter descends and splits again. As the blades of the cutter rise, they are cleared of any pieces of wood that may be clinging to them, by a clearing plate fixed above, and into which the cutter plays freely, as it rises and falls, through apertures or notches in the plate. When the machine is in motion, the bed not only carries the blocks to the point where they are split by the cutter, but it also carries off the wood after it is split. Of course this movable bed could not, of itself, resist the blow of the cutter, as it is a mere series of sections linked together, and would yield downward at every blow, unless it were supported by a firm table underneath. Now, it will be seen, that the carrying bed moves horizontally, the block to be split stands vertical or upright, and the cutter, as it rises and falls, operates vertically, and at right angles with the bed or carriage. When the cutter descends, the block is easily split, as the table over which the bed moves furnishes that resistance which a solid chopping block does to the common axe, as ordinarily used, in splitting short pieces of wood.

In the alleged infringing machine there is also a combination of parts, consisting of a movable bed or carriage, on which the block to be split is placed, a cutter, and a clearing plate, but these parts are differently distributed, so far as location is concerned, from the same parts in the plaintiff's combination. The carrying bed in the defendants' machine, as compared with that in the plaintiff's, moves across the machine instead of lengthwise, or, in other words, at right angles to the line of motion of the plaintiff's bed. This bed of the defendants' forms the bottom of a trough, the back side of this trough presenting an upright wall. The block is laid horizontally on this bed, with the base or heel of the block against the upright wall, and the top or end which is to first receive the blow of the cutter forward. Of course, the cutter is not placed over the block, but forward of it, not in a vertical, but in a horizontal position, so as to move in a line with the grain of the wood. In other words, as the block to be split lies in a horizontal position, the blade that is to split it from end to end must have a horizontal motion. The block being placed horizontally on the bed, the latter, by an intermittent feed motion, carries it into line with the cutter, and the latter, by a reciprocating movement, enters the end of the block and splits it. The upright wall or back side of the trough, being firm, furnishes a resistance which enables the cutter to cleave the block.

Now, by a recurrence to the language of the first claim in the plaintiff's patent, it will at once be seen, that there is one feature of the description which is not found in the defendants' machine—to wit, the operation of the cutters at right angles to the bed or carriage; and I am asked to so construe this feature of the description, as to hold the patentee to it as an essential element in his invention. It would follow, from such a construction, that, inasmuch as the defendants' cutters operate, not at right angles to the carrying bed, but in the same horizontal plane with it, there is no infringement. But, in my judgment, this feature of the operation of the plaintiff's machine, as it appears in his specification, is merely descriptive of that which is incidental rather than essential. The defendants have caused it to disappear by a transposition, or different distribution, of the active elements of the organized mechanism, while they have retained every feature of the plaintiff's machine which is essential to the performance of the same result in substantially the same way. Placing their block horizontally, they must give their cutter a horizontal line of motion; and, as the point of resistance, in order to be effective, must be in the same plane, they are obliged to shift it from under the carrying bed to the rear of it, and to give its face a vertical instead of a horizontal position. In so doing, they have, in my judgment, introduced no essential element that is not found in the plaintiff's machine, nor have they omitted any. They have simply avoided embracing an incidental and unimportant feature, which is no more vital to the plaintiff's invention, than is the shadow cast by a body vital to the body itself. I hold, therefore, that the change effected by the defendants in the mechanism is colorable and not material, and does not relieve them from the charge of infringement. As that part of the claim of the patent which describes the feature in question, relates to a nonessential matter, I do not feel called upon to hold the plaintiff strictly to it. The shape of the defendants' knives is not like that of the plaintiff's; but the latter confines himself to no particular form of cutting instrument. In his patent he describes one form as preferable, but the defendants' are plainly equivalent.

I have examined the various patents put in evidence to antedate the plaintiff's invention, and compared them with it, but I do not find any which, in my judgment, embraces the same construction and ar-

er the words of the constitution do not connect the presentment with the subsequent proceedings, so as to make the whole one entire prosecution. "No person shall be held to answer. for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Is it the indictment or presentment, he is to answer? I do not say that it is. Perhaps it is not. But if it be, how singular would be the proceedings which should commence in one court, especially in a court without jurisdiction, and be carried on in another, without being removed by those means provided by the law for transferring causes from one court to another?

Motion to quash overruled, and the order to certify the presentment to the district court, refused.