## OSHOGA vs. THE STATE.

1. CRIMINAL LAW — EXTRA JURY TERM. — A grand jury may lawfully be summoned at an extra jury term of the circuit court, appointed as provided by ch. 83, sec. 6, R. S. 1849, and indictments found by it are valid. The decision of the circuit judge as to the necessity for holding such term is not subject to be questioned or reviewed. LARRA-BEE & WHITON, J. J., *dissenting.*

2. SAME. — A criminal cause may lawfully be tried at an extra jury term.

(3 Chand., 57.)

ERROR to the Circuit Court for *St. Croix* County.

The plaintiff in error, *Oshoga*, an Indian of the Chippewa nation, was indicted and tried for the murder of Alexander Livingston, and was convicted and sentenced by the court. It appeared from the record that on the 14th day of August, 1850, the circuit judge at chambers made an order for the holding an extra term of the circuit court for St. Croix county, on the day before mentioned, in which order it was expressed to be an extra jury term, deemed necessary to complete the jury trials during the

year; in which order the clerk was requested to make out lists, draw and issue a *venire* for a petit and grand jury, for such court.

At the time appointed the court was organized, and the sheriff returned the *venire* for a grand jury, with the names of twenty persons summoned as grand jurors; after which, the judge ordered a *venire* to be issued for summoning two additional jurors, he discovering that the panel was incomplete, to supply the deficiency.

The jury thus summoned was sworn. The *venire* for a petit jury was also returned by the sheriff, with a panel of thirty-two names indorsed thereon, as having been summoned; and the judge regarding that number as insufficient, another *venire* was ordered for summoning ten jurors in addition, which was done. The grand jury found this indictment for murder at the same term. The prisoner, by his counsel, filed a demurrer to the indictment, which was overruled by the court, and by leave of the court, he pleaded not guilty. At the same term a trial was had by a jury taken from the jurors summoned, as aforesaid, and the plaintiff in error was found guilty of the murder charged; and sentence was pronounced.

In this court, the counsel for the plaintiff in error assigned and argued the following matters, alleged as errors in the proceedings:

1st. It was error in the court to order a *venire* to be issued for summoning a grand jury at a special term of the court.

2d. It was error in the court to have impaneled and sworn such jury.

3d. The court erred in receiving the bill of indictment found by the grand jury against the plaintiff in error, and trying him thereon.

4th. The court erred in impaneling the petit jury to try the accused.

5th. The judgment and sentence of the court, upon the record and proceedings before mentioned, were erroneous.

The judges of this court being equally divided in opinion as to the legality of the conviction, it was therefore affirmed.

The following opinion of the court is by the judge before whom the trial and conviction were had :

*Cole & Biddlecome,* for plaintiff in error.

*S. Park Coon,* Attorney General, and *Jas. H. Knowlton,* for the state.

KNOWLTON, J.   The record in this case shows that no term of the circuit court, as fixed by statute, was, or could be holden in the county of St. Croix, in the year 1850.   That I made an order at chambers for, and appointed an extra jury term, to be holden on the 29th day of August last, and among other things, the clerk of the court was ordered to issue a *venire* for a grand jury, which was done accordingly.   This grand jury found and returned into court an indictment for murder against the plaintiff in error, upon which, at the same term he was tried, convicted and sentenced to be hung, whereupon the plaintiff sued out a writ of error.   The only question in the case for decision is — can a grand jury be legally impaneled at an extra jury term ?

This is a question of great importance, and should be minutely examined, cautiously traced, and decided upon principles too firm to be shaken by any thing of ephemeral character. The question goes to the jurisdiction and requires an examination of the constitution, the statutes, and the common law of the land.

1st. Can the jurisdiction be maintained by the constitution and statutes ?

2d. If not, will the jurisdiction attach at common law ?

These propositions will be examined in the order indicated.

In art. 7, sec. 8 of the constitution, it is declared, " The circuit courts shall have original jurisdiction in all matters, civil and criminal, within this state, not excepted in this constitution, and not hereafter prohibited by law, and appellate jurisdiction

from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions."

The revised statutes, page 412, sec. 6, provide, among other things, that the judges of the circuit court, "in vacation, shall have power to award, throughout this state, returnable in the proper county, writs of injunction, ne exeat, and all other writs and process which may be necessary to the due execution of the powers with which they are vested, and the said courts shall respectively have power and authority to hear and determine all cases of crimes and misdemeanors, of whatever kind, not exclusively cognizable by a justice of the peace, which may be committed in any county or place within their respective circuits."

It is obvious that the constitution has conferred upon the circuit courts a general jurisdiction over criminal matters, subject only to the restriction of that instrument and constitutional legislative prohibition; no such restriction or prohibition exists as to the crime of murder. Having power then, to try a person charged with such crime, at a given time, the use of all the machinery of the court to the proper exercise of that power, is *ex necessitate* part and parcel of, incident to, and goes with it. This proposition is deeply imbedded in the elements of reason for its foundation; were it otherwise, our system of government might be impotent of judicial power at an important crisis, and our government crumble, totter and fall; an idea too ridiculous and intolerable to receive attention. This principle is sustained by the following cases: *United States v. Hudson & Goodrich*, 7 Cranch., 32; *Gardiner v. United States*, 3 Scam., 83; 1 Brock., 156.

In reference to the case in 3 Scam., 83, it is contended it is based upon a statute of Illinois, and so entirely different from

ours as to have no application to the case at bar. It is to be regretted that we have not the whole case as reported, but from the digest, it appears that the accused was indicted at a term of the court appointed by the judge, and that the statute of that state requires the court, at such appointed term, to try all persons then in jail, on a charge of crime. The supreme court of that state held that as the statute required the court to try such prisoners at the term so appointed, it was lawful to impanel a grand jury, to the end that those prisoners might have their trial. Now, it will be readily perceived that the power to impanel a grand jury in that case was an incident merely to try the prisoner. The court had the power to try the prisoner from the statute requiring the court to do it, or it possessed the power independent of that statute. It is presumed the court had the power by some other statute or paramount law, and that this statute was merely directory in requiring the court so to do, to the end that the accused should have a speedy public trial, and not that he should be tried, whether prepared or not; or, in other words, the statute did not impose an injunction stripped of any alternative, and not subject to construction like other statutes, in order to carry out the intent of the law making power, consistent with sound reason. It amounts to no more than a declaration that the court may try all persons confined at the time so appointed. But, admitting that this view of the matter is correct, and that the court had no power to try a person save that conferred by the statute requiring it to do so, yet the court had the power to try, and it was by virtue of this power that it could do so, and from this resulted the incidental right to the grand jury, as a part of the machinery of the court, without which the court could not exercise the power given, unless, perchance, all the prisoners had been indicted previously. It would seem, therefore, upon principle, that a grand jury may be impaneled at any term of the court when the cause may be tried, provided the indictment must (or may) be found in the *same court*. Whatever a court may do, it is

lawful to do. This brings me to an examination of the power of the circuit courts of this state to try a person accused of the crime of murder at an extra jury term appointed by the judge, as required by the statute (Rev. Stat., 412, sec. 4), which provides that "it shall be lawful for the judge of any circuit in this state to appoint not exceeding one extra term of court to be holden in any county in said circuit, in case he shall deem such term necessary to complete the jury trials of such county during any year, and to cause lists of petit jurors to be drawn, and writs of *venire* to issue as in other cases." Now can a trial be had at a term appointed as contemplated by this section, when such trial requires the intervention of a petit jury? It was conceded on the argument that such trial might be had in causes when an issue of fact had been joined, at the time the order was made for such term, and that the power was limited to such cases. The rule thus limited would bar a trial in a criminal cause when such issue was not made, notwithstanding the indictment might have been found at some previous term of the court, as the plea in such cases is seldom put in until the trial is about to commence. By what rule of construction, or upon what principle of legal deduction is this position to be maintained? I confess that my powers of discrimination have entirely failed to make the discovery. There is not one word in this section about issues either of law or fact. Let us test the soundness of this doctrine by a single case:

Suppose that after the term is appointed, A. discovers that he has time to commence an action by declaration, and does so, and gets an issuable plea ten days before the first day of such term, and that he immediately files the note of issue, and gives notice of trial at the term. The clerk dockets the cause, and, during the term, the case is called for trial, and the defendant should then object that the court had no power to try it; would the court listen one moment to such objection, or if it did not, would this court for that objection reverse the judgment? I apprehend not. Does this section authorize in terms,

the court to impanel a jury, try a cause, receive a verdict, render a judgment, or do any single act that a court may do? Certainly not. How, then, and why can the court at such term perform the functions of a court? For the obvious and sole reason that *it is a court*, the jurisdiction and authority of which stand in bold relief on the pages of the statute and constitution. *There* is to be found its helmet and shield. The manner of, or the *modus operandi* by which that jurisdiction or authority is set in motion or exercised, may or may not be defined by statute; when it is, it should be observed and followed; when not, the course of the common law, if any, directs; and when there is neither, *reason* is the polar star. But however this may be, the power may be exercised, and when it has been, and the manner of doing it pursued, I see no reason for complaint.

Before entering upon a minute examination of the power exercised in this case, and the manner of exercising it, let us examine this section and its proper construction a little further. Before doing so, however, I will remark that all the power conferred by this section is given to the judge at chambers, and not to the court. This distinction is material and should be borne in mind, as error may be avoided by so doing. For certain it is, that the powers delegated to a judge, as such merely, can have nothing to do with, and form no criterion as to his powers when sitting as a court. With this I resume the investigation of the powers exercised in this case, which leads us to a particular examination as to what is the proper construction of the section on which its exercise is based previous to the coming of the court. By virtue of this provision of the statute, the judge is authorized to do three distinct things, and no more. First: To appoint not exceeding one extra jury term of court, during any year, in any county in his circuit. Second: To cause lists of petit jurors to be drawn. Third: To cause writs of *venire* to issue as in other cases. We will examine each in order. The language " in case he shall deem such term necessary to complete the jury trials of such county

during any year," is merely directory to him, and is the guide as to the state of case or facts upon which his mind must operate, in order to exercise the power first conferred. And when his mind is so satisfied, he may appoint the term; and when he does so, this portion of the statute is fulfilled, has no more demands, and nothing more to do with the matter. This decision made and carried into operation is final and conclusive, and cannot be drawn in question in any way known in law for the review of decisions made by subordinate tribunals. That this should be so will appear obvious, when we consider that a contrary doctrine might unsettle everything done by the court at such term. The intermeddling with the exercise of such discretion would be fraught with dangerous consequences. It would be annihilating a rule, with few exceptions, of universal application, which is, that a decision resting in discretion merely, is the law as to the matter adjudicated. Now, no particular number of jury cases are required to exist before the judge may exercise this discretion, and appoint the term. He judges of the necessity, whatever the number may be, and acts accordingly in the premises. But it is said that the language, "jury trials," is descriptive of the cases the court may try, and that a criminal case, when the accused has not been previously indicted, is not a jury case. This proposition assumes that whether a criminal case is a jury case or not must depend upon the time when the indictment is found, and not upon the the fact that a crime has been committed. I cannot yield my assent to this proposition, but on the contrary hold, that whenever an individual has committed an act declared or punished as criminal, and legal proceedings are taken against him, that from that moment it is a jury case in every legal point of view, and that most emphatically so, inasmuch as the accused has, by the constitution, secured to himself the right of a *speedy public trial* by jury; so that if it be admitted that this language is descriptive of the cases that the court may try at such term, and that all others would be excluded, the case at bar, charg-

ing upon the defendant the crime of murder, is a jury case; now, it is true that an issue of fact should be joined in a criminal case before a petit jury is called to decide whether the facts charged upon the prisoner are true or not. This principle, however, has application to what must be done in the case before it is ready for the action of the traverse jury, and has nothing to do with the question whether it is or is not a jury case; that depends upon the law, and by our statute it is made the duty of the court to enter the plea of "not guilty" when the accused refuses to plead.

Again : It is said that the language, "and to cause lists of petit jurors to be drawn," confining the court to petit jurors, excludes the right to a grand jury. It would be a sufficient answer to this proposition to reiterate what has been before suggested — that the power here given is to the judge at chambers, and has nothing to do with the rights or powers of the court. The powers of a judge at chambers may be circumscribed within very narrow limits, and yet a court be vested with most plenary powers. But yielding this ground, upon what principle of law can such a doctrine be sustained by a court? I have yet to learn that when a statute confers some new right or power, that it thereby takes away, excludes, or works a forfeiture of all or any other right or power, although so totally different as not to be placed in juxtaposition therewith. Let us exemplify this doctrine. Suppose that the legislature, at their session, should pass a law that the circuit courts of this state, at the stated terms, should have power to hear and determine all misdemeanors in the proper counties of their several circuits, and to cause lists of petit jurors to be drawn, and writs of *venire* to issue. Such statute would be more specific than the one under consideration. The one supposed, would give absolute power to the court to hear and determine all misdemeanors, whereas the other gives no authority to the court to hear or determine any case; but the power to do so must be sought somewhere else, and when found, it is ample, general and not

limited in its exercise, to any given time. Who will contend
that the supposed statute would take away the power of the
court to hear and determine civil causes and felonies, as con-
ferred by the constitution? Such doctrine is, to my mind,
legal heresy, and I venture the assertion that no well adjudi-
cated case can be be found to support it in the books. Why,
even a statute providing a new remedy does not take away a
remedy previously existing at common law, unless negatived
thereby; and when not negatived, either remedy may be pur-
sued. This principle is so familiar as to require no authorities
to be cited in its support. I apprehend that when it is said
that what is expressed excludes what is not expressed, means
nothing more than this; that the language is to be so construed
as not to include subjects not within the words of the enact-
ment, or plain intent of the law-making power; but that it
has nothing to do with other rights or powers conferred by
some other statute or paramount law.

In England, where parliament has supreme legislative pow-
er, the courts hold that the powers of a court of general juris-
diction can only be taken away by express words or necessary
implication.

How then can such power be taken away from a court by
giving power to the judge at chambers, and that too, when this
general power or right is conferred by a written constitution,
so elevated as to be above legislative reach?

It will require more than ordinary logical skill to establish
the fact, that when you give one thing without qualification,
that of necessity, it takes away some other thing. The last
power given to the circuit judge at chambers by this 4th sec-
tion, is "to cause writs of *venire* to issue as in other cases."
Here it is said, that although the language, "writs of *venire*,"
is general, and in the plural, that is to be taken in a restricted
sense, controlled by the preceding language, and only means a
*venire* for a petit jury in the first instance; and in case it be-
comes necessary to have talesmen, then another *venire* for that

purpose, and so on, and thereby you get your writs. Now, can the judge at chambers cause more than one writ of *venire* to issue for a petit jury? But, suppose this be admitted, will the right to issue a *venire* for a grand jury be taken away by giving a right to issue a *venire* for a petit jury? If so, then, if the statute read " and cause writs of *venire* to issue for a grand jury as in other cases," the right to have a petit jury, by the same rule of construction, would be taken away, which would have the effect to take away from the clerk what he is by another provision of statute, required to do, as we shall presently see. But I forbear pursuing this mode of construing statutes further. Now, how is a jury obtained? What officers officiate in that matter, and how do writs of *venire* issue in other cases? The statute answers: " The board of county supervisors, at their annual meeting in November, shall select from the poll list of the different towns, in their respective counties, and the counties attached thereto, for judicial purposes, last returned to the clerk of their board, and shall make out a list of seventy-five persons, properly qualified, to serve as grand jurors, and another list of one hundred and forty persons, properly qualified, to serve as petit jurors; which lists, certified and signed by the chairman of the board making such lists, shall be forthwith delivered to the clerk of the circuit court, etc. Rev. Stat., 511, sec. 3.

Sec. 5 provides, that " if for any cause such lists should not be made and delivered as aforesaid, by the board of county supervisors at their annual meeting in November, it shall be their duty to make out and deliver the same as aforesaid, at any regular meeting of said board." The sixth section provides what kind of persons shall be thus selected.

It is then provided by sec. 7, " on receiving such lists, the clerk of the circuit court shall write the names of the persons contained therein, on separate pieces of paper, each in the same manner, as near as may be, so that the name written thereon shall not be visible, and shall deposite such pieces of

paper, those containing the names of the grand jurors in one box, and those containing the names of the petit jurors in another box, from which they shall be drawn as hereinafter provided."

"Sec. 8. At least fifteen days before the sitting of any court, the clerk of the court, in the presence of the sheriff or under sheriff and a justice of the peace, shall proceed to draw the names of twenty-three persons from the box containing the names of the grand jurors, to serve as grand jurors at such court, and the names thirty-six persons from the box containing the names of petit jurors, *to serve as petit jurors at such court.*"

The next section provides that the clerk shall "issue and deliver to the sheriff or under sheriff of the county two *venires,* one for the grand jury and one for the petit jury, under the seal of the court, commanding him to summon the persons so drawn as grand jurors, to appear before the said court, at or before the hour of eleven o'clock A. M., on the first day of the term thereof, to serve as grand jurors; and persons so drawn as petit jurors, to appear before the said court, at or before the hour of eleven o'clock A. M. on the second day of the term thereof, to serve as petit jurors."

The next section provides that the sheriff shall summon the persons named in each *venire* at least four days before the sitting of such court.,

The 12th section provides that there shall not be more than twenty-three persons, nor less than sixteen persons, sworn on the grand jury. There is no complaint that these provisions have not been complied with. The statute of 1839 provides for fifty grand and seventy-five petit jurors; two full panels of each jury. There were but two jury terms provided for under that statute. Now, why did the legislature at the same time it made provision for an extra jury term, require that the board of supervisors should make out lists of persons qualified to serve as grand and petit jurors, sufficient (with a few

additional to meet cases of death, etc.) for *three* full panels of each, corresponding exactly with the number of terms that the court might have a jury, unless the court might have a grand jury at the extra jury term, should there be one appointed? Why require the clerk to issue a *venire* for a grand jury at the same time and for the same terms that he is required to issue a *venire* for a petit jury, unless the intention was that the court should have a grand jury at the same time that it had a petit jury?

If a greater number than is intended for use be put upon the lists, why not give the county of Milwaukee, for instance, with the three regular terms, an extra number of persons for the juries instead of exhausting both lists? Is not the duty of the clerk plain, and couched in positive mandatory language, applicable alike to grand and petit juries? Can the clerk comply with the statute by issuing one *venire* when it is declared that he shall issue two? Does the statute authorizing the judge "to cause lists of petit jurors to be drawn and writs of *venire* to issue as in other cases," relieve the clerk from the performance of a duty enjoined upon him by the positive commands of a statute? But it is said that the clerk can only issue a *venire* for a grand jury at the regular term, and the language, "any court," used in this statute, properly construed, means any regular term; as otherwise, the clerk would have to issue a *venire* for both juries at the special terms authorized by sec. 5, p. 412 of the revised statutes, which is in these words: "It shall and may be lawful for the judges of the circuit court of this state to hold special or adjourned terms at any time they shall deem it necessary, for the purpose of hearing and disposing of all motions or questions of law; and all judgments, orders or decrees that may be made or entered at said special terms shall be as valid and effectual, to all intents and purposes as any judgments, orders or decrees, made or entered in term time." Suppose the language will warrant such a construction, it proves nothing against the right of a grand jury

at the extra jury term.　But the language, on the contrary, goes to establish that right.　All difficulty on this score will vanish whenever we reflect that courts do the business for which they are held, and not business which they are not holden to do.　For what purpose, then, may these special terms be held?　The statute declares "for the purpose of hearing and disposing of all motions or questions of law."　Now for this purpose no jury is needed.　I submit, that if the legislature had intended that the court should have juries at more than three terms, they would have provided lists of sufficient numbers to carry into effect that intention.　I might here notice that it is provided by this section, that all judgments, etc., made or entered at said special terms shall be as valid and effectual as any judgments, orders, etc., made or entered in term time.　The legislature has endeavored to make as clear a distinction between special terms and general or jury terms (which is what they mean when they say term time), as a farmer would in saying wheat and buckwheat.

But it may be said that there is equally as much difference between the language extra jury term, and that used as descriptive of the terms previously provided for in this chapter and fixed, usually called regular terms.　These terms are established by sec. 2, Rev. Stat., 411, in these words:

" The circuit courts of this state shall be holden at the times and places following," etc.　The time fixed for holding the courts by the statute is what determined the term thereof.　The circuit judge decides the time and necessity of the other or extra term.　There is no such language used in the statute as regular terms, general terms, or jury terms, except in the fourth section before cited, where it occurs with this prefix, "extra," and this presents a very cogent reason for saying that the legislature evidently intended that this extra jury term should be in all respects like those fixed in a different manner in section 2, above cited.　If this is not their intention, it will be exceedingly difficult to divine what they did mean.　If this be the

intent and meaning, then the words extra jury term, as there used, are synonymous with the terms thus fixed. Why call or name these terms *jury* terms? Obviously, that the court might have juries, and it explains the reason why the clerk is to issue at the same time two *venires* " before the sitting of any court," one for the grand and the other for the petit jury, without leaving him any discretion to issue *one* and not the other, as *he* might think proper. The very word "extra," used as in this case, as a prefix, implies that it should be a term alike in all respects, to some other terms of the same court. Again, if there is only a petit jury allowed at an extra jury term, why not provide for the petit jury to be summoned to appear on the first day of the term, instead of the second day, as provided by the statute? Simply because writs of *venire* are to issue, as in other cases, for both grand and petit juries, and it is an extra general jury term in all respects whatever.

Some doubts are entertained whether the clerk is not the person who must draw the lists of petit jurors. The statute settles this matter. The board of county supervisors are to make out the lists for both juries and deliver them to the clerk, and the clerk merely draws the names out of the boxes for the *venires* for the grand and petit juries. The statute nowhere requires the clerk to draw lists of petit jurors; his duty is all to be performed after he receives the lists, and he is not such an officer as to take this power by implication. His powers and duties are limited. The power of the court, however, for aught that appears, is as ample at an extra jury term as at any other term, and it would seem that public policy requires it should be so. The grand jurors, as well as the court or petit jurors, have as much honesty and integrity as well as knowledge, at one time as at another, and when the statute is followed in preparing the juries for the court, there is no chance to practice fraud or imposition, any more than at another time, although it might have been done by corrupt officers at common law ; public justice cannot be retarded by such course, but may be promoted.

Oshoga vs. The State.

If the accused is guilty, justice does not require any procrastination. If he is not, he may be the sooner restored to his family and friends, and enjoy the blessings of society, peace and healthy air, agreeably to the spirit of the constitution, giving "a speedy public trial by an impartial jury of the country or district wherein the offense shall have been committed." A provision so wholesome to both the accused and the public, no doubt had great force, and may have been the primary moving power upon the minds of the legislature, in making this wholesome provision for an extra jury term, when the circuit judge became satisfied of its necessity to complete the jury trials within any year.

At common law, a grand jury was a part of the machinery of a court, like our circuit courts, of general jail delivery. This jury was also an incident to the sheriff's office and duty. There is no statute taking away the common law right to a grand jury. The circuit courts, then, may have this jury by right of the common law. I shall not go into an examination of the common law, but content myself by saying, that the bearing upon this branch of criminal jurisprudence may be found in Hale's Pleas of the Crown, Hawkins' Pleas of the Crown, and 5 Bacon's Abridgement, title "juries," and 2 *id.*, title "court." If this power exists either at common law or by statute, it is the imperative duty of the judge to exercise it when he shall deem it necessary.

I have considered this case somewhat at length, for the reason that this is the first and only time that a grand jury has been impaneled at an extra jury term. It would seem proper, therefore, that some of the reasons which guided me in so doing should be placed upon record. I think the judgment should be affirmed.

Judgment affirmed by an equal division of the court.

LARRABEE, J. The plaintiff in error was convicted of murder and sentenced at a special term of the circuit court. He

was also indicted at the same term by a grand jury, summoned for that term. There is no question but he could be legally tried at a special term, but the difficulty is in the order of the judge, directing a grand jury to be drawn.

The terms of the circuit court are fixed by law, and directions given to the clerk to draw a certain number of jurors, grand and petit. This is by the general law regulating the general terms of court. The juries are summoned under the provisions of the statute, and not by the order of the judge. But power is given the judge to appoint an " extra jury term " for the trial of issues formed at the previous circuits, and which were undisposed of for want of time, and to summon a jury for that purpose. It is not claimed, I believe, that this is one of the common law powers of the circuit judge or of the circuit court. But the power is derived directly from the statute. And certainly no power exists outside the statute for holding extra terms, even for the trial of issues previously formed. Does the statute then give the power to order a grand jury to be summoned at an extra jury term? I think not. If this had been intended, it would have been expressed. It was intended to give the power to summon petit jurors, and this is distinctly expressed.

I am entirely clear, therefore, that the grand jury in this cause was summoned without authority of law, and that the judgment should be reversed.

WHITON, J., concurred in this opinion.