## UNITED STATES *v.* ANTZ.[*]

*(Circuit Court, E. D. Louisiana.* February, 1883.)

1. CRIMINAL LAW—VENIRE FACIAS.

A paper purporting to be a *venire facias* is irregular when it is addressed to the "marshal of the district of Louisiana," when there was no such officer, and when the title of the executive officer of the court is "the marshal of the eastern district of Louisiana."

2. SAME—REV. ST. § 911.

Such a paper, tested in the name of the deputy clerk, was neither writ nor process, the statute of congress providing that all writs and processes issuing from a circuit court shall bear teste of the chief justice of the United States, (1 St. at Large, p. 295, § 1; Rev. St. § 911;) it was not a writ of *venire facias,* nor any process in the nature of that writ.

3. SAME.

A writ of *venire facias,* or a process in the nature of that writ, under the law, is indispensably necessary for the bringing together a grand jury.

On Motion to Quash the Indictment.

*A. H. Leonard,* U. S. Atty., and *Charles E. Woods,* Asst. U. S. Atty., for the United States.

*John S. Rouse, Wm. Grant,* and *J. Ward Gurley, Jr.,* for defendant.

BILLINGS, J. A motion is made to quash an indictment on the ground that no *venire facias* issued for the summoning of the grand jury which found the same.

The rules of the circuit court on the subject of drawing and summoning the grand and petit jurors are as follows:

Rules with reference to the drawing of jurors, adopted November 13, 1879:

In order that the practice of the court may conform to the provisions of the act of the congress relating to jurors in the courts of the United States, the following rules are adopted, and are designated as "Rules with reference to the drawing of jurors," in place of rules 29, 30, and 31, which are hereby repealed:

(1) The marshal shall provide a jury-box having two separate locks with dissimilar keys, one of which shall be kept by the clerk and the other by the commissioner. The clerk shall have the custody of the box, and it shall not

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

be opened except in the presence of the court, by both the clerk and commissioner, when names for a jury are being drawn therefrom or placed therein in pursuance of the orders of the court, or when it shall be ordered to be emptied by order of the court in pursuance of these rules.

(2) A person having the qualifications required by law shall, at each term of the court, be appointed jury commissioner for the term; provided, that the fact that any person has served as commissioner shall not render him ineligible for reappointment; and provided further, that the court may, in its discretion, remove the commissioner and appoint another person to act in his place.

(3) Whenever a jury list shall be ordered, the jury commissioner and the clerk shall alternately, and in accordance with the provisions of the law, place in the jury-box such number of names as may be directed by the court of persons having the necessary qualifications of jurors, which names shall be written on ballots of uniform size and on similar paper. The list of names identified by the signatures of both officers shall be filed in the clerk's office. Whenever a drawing of jurors is necessary, and the number of names in the box has been reduced below 300, the list shall be supplemented or the box emptied, and a new list prepared as the court may direct.

(4) Whenever a *venire*, original or according to the provisions of the law, supplemental, either for grand or petit jurors, shall be ordered, the requisite number of names shall be drawn in open court by the marshal, who shall proclaim in an audible voice each name as it is drawn, and the clerk shall forthwith enter the same upon the *venire*.

(5) It shall be the duty of the jury commissioner to attend at every drawing of jurors, either under an original or supplemental *venire*, and his presence shall be noticed in the minutes of the court.

(6) Upon the appointment of a jury commissioner it shall be the duty of the clerk to furnish him with a copy of these rules, with a clear reference to the statutes relating to the qualifications, the limitations upon disqualifications, and the drawing of jurors.

The records of the court show that these rules were strictly complied with as to the drawing of the grand jury, and that the following order was issued for summoning the same:

Order to draw petit and grand jurors, entered November 9, 1882:

It is ordered by the court that the marshal do, on Saturday next, the eleventh day of November, instant, draw from the jury-box, in manner prescribed by law and the rules of court, the names of 48 persons to serve as petit jurors, and the names of 23 persons to serve as grand jurors, during the November term, A. D. 1882, of this court, and that a *venire* for said jurors issue in due form, returnable, as to the petit jurors, on Monday, the thirteenth instant, and as to the grand jurors, on Wednesday, fifteenth, at 11 o'clock A. M.

Further, it is ordered that the jury commissioner be notified to be present at the drawing of said *venire*.

The paper which actually issued from the clerk's office was as follows:

*Venire* for 23 grand jurors, issued November 11, 1882:

*The President of the United States, to the Marshal of the United States for the District of Louisiana, Greeting:*

You are hereby commanded to summon the following-named good and lawful men, to be and appear before the United States circuit court, fifth judicial circuit, and eastern district of Louisiana, at the city of New Orleans, on Wednesday, the fifteenth day of November, 1882, at 11 o'clock A. M., then and there to serve as grand jurors during the November term, 1882, thereof, iz.:

1. P. O. Aleix, 75 Dauphine.
2. Felix Flechier, 149 Dauphine.
3. B. D. Wood, 25 Camp.
4. H. C. Gause, 374 S. Franklin.
5. William Kern, 29 Carondelet.
6. Saml. Alston, 138 Fourth.
7. Horatio Lange, 20 Carondelet.
8. L. Terrebonne, 82 Decatur.
9. Marshall J. Smith, 191 Gravier.
10. Jos. L. Robichaux, 278 Esplanade.
11. Lionel C. Levy, 17 Peters, First district.
12. Urban Theurer, 6 N. Peters.
13. Richard Murphy, 142 Erato.
14. Geo. Maritche, 253 Bourbon.
15. John S. Meilleur, 198 Gravier.
16. Jas. J. Reiss, 93 Decatur.
17. James Prevost, 294 N. Prieur.
18. George Kernan, 462 Dauphine.
19. George Lambert, 149 Dauphine.
20. C. T. Grandpre, 164 N. Rampart.
21. Adolphe Billet, 113 S. Rampart.
22. Geo. Sarpy, 163 Burgundy.
23. L. C. Souchon.

And herein fail not at your peril.

Witness my hand and seal of said court, at the city of New Orleans, this eleventh day of November, 1882.                    T. V. COUPLAND,
                                                              Deputy Clerk.

The records of the court also show that upon the day fixed for the appearance of the jurors, and upon the adjourned day, 17 persons out of a list of 23 appeared, and were sworn and impaneled as a grand jury, and that by this body so organized this indictment was found.

The first question is: What was the character of the paper delivered to the marshal from the clerk's office? It was certainly irregular in that it was addressed to the "marshal of the district of Louisiana," when there was no such officer, and when the title of the executive officer of this court is the "marshal of the eastern district of Louisi-

ana." But a graver defect is in the testing. It is observed this paper is tested in the name of the deputy clerk. The statute of congress—act of May, 1792, (1 St. at Large, p. 295, § 1; Rev. St. § 911)— provides that all writs and processes issuing from a circuit court shall bear teste of the chief justice of the United States. This paper, then, was neither writ nor process. It was not addressed to any officer in existence, and it lacked the teste which the law prescribes. It was not a writ of *venire facias*, nor any process in the nature of that writ.

The question is then presented to the court: Is a writ of *venire facias* or a process in the nature of that writ, under the law, indispensably necessary for the bringing together a grand jury? Prior to the statute of 1846 the congress did not by name indicate what writ or process should be employed in procuring grand juries. In the acts of 1789 and 1793 the law provided that "the circuit courts shall have power to issue writs of *habeas corpus, scire facias,* and all writs not specifically provided for by statute which may be necessary for the exercise of their jurisdiction, and agreeable to the usages and principles of law." 1 St. at Large, 81, 334; Rev. St. § 716. Congress, by these same early acts, granted to the circuit courts jurisdiction in the matter of the punishment of crimes and offenses which necessitated the action of grand juries; so that the exercise of the jurisdiction of the circuit courts made necessary process for calling together grand juries; and since the process for that purpose which was "agreeable to the usages and principles of law" was the writ of *venire facias,* these courts were invested with power to issue that writ. *U. S.* v. *Hill,* 1 Brock. 156. The twenty-ninth section of the act of 1789 (1 St. at Large, 88; Rev. St. § 803) provided that "writs of *venire facias,* when directed by the court, should issue from the clerk's office, *i. e.,* in vacation, when they had been ordered by the court, and made strict provision for their service and return.

Although the writ which was to be used by the courts of the United States for summoning the juries was denominated in the statute a *venire facias,* and in its general features was that writ, it was not precisely that. The writ of *venire facias* was the process used to summon in a jury after issue joined, and when a trial was to be had in a particular cause, and was confined to that cause. Hence it was that the challenge to the array was limited to the interest or favor of the officer who summoned. The writ used throughout all the states of the Union for the summoning of petit juries, though known as the *venire facias,* was more precisely the "general previous precept, by

virtue of which the sheriff returned into the courts of jail delivery divers several panels, and returned and delivered in one or more of those panels from time to time as the court needed and called for any." *Peter Cook's Case,* 13 How. St. Tr. 327, per TREBY, L. C. J., Talcot, *arguendo; People* v. *McKay,* 18 Johns. 214.

Since at the common law the writ in the nature of *venire facias* was used for no other purpose than to convene grand and petit juries, it is manifest that the congress by authorizing its issuance meant to include it as the writ for juries, under the grant to the courts of "power to issue all writs necessary for the exercise of their respective jurisdictions." If the congress had stopped here the question would have been, whether, there being a grant of power to issue all writs necessary for the exercise of their jurisdictions which were agreeable to the usages and principles of law, as well as a jurisdiction which for its exercise rendered grand juries necessary, namely, a jurisdiction in criminal causes, and the ancient and invariable writ according to the usages and principles of law being the *venire,* the courts of the United States must not employ that writ, or a process in the nature of that writ, in the exercise of their criminal jurisdiction. I say if congress had stopped here, the question would have been how far the acts of congress had made the usage of the common law the exclusive guide or rule for convening grand juries.

But congress has not yet stopped here. By the act of 1846 (9 St. at Large, p. 72, § 3; Rev. St. § 810) congress enacted—

" That no grand jury shall be summoned to attend any circuit or district court unless one of the judges of such circuit court, or the judge of such district, in his own discretion, or upon a notification by the district attorney that such jury will be needed, orders a *venire* to issue therefor, and either of said courts may in term order a grand jury to be summoned at such time and to serve such time as it may direct, whenever in its judgment it may be proper to do so."

I am aware that the immediate purpose of this last provision was to do away with the invariable presence of a grand jury at every term of a circuit or district court, and to leave it discretionary with the judges whether and when such a body should be convened; but I think the fair meaning of the enactment is that congress either makes it, or recognizes it as already being, a rigid, unyielding requirement of the law that no grand jury shall be summoned unless a *venire facias* has therefor issued, if in the vacation, by order of one of the judges, or, if in term time, by order of the court. This is the view of Mr. Justice NELSON, in *U. S.* v. *Reed,* 2 Blatchf. 435, 451.

At the common law, juries, grand or petit, could be summoned only through the usual precept, except only in case of a jury *medietate linguæ*,—*i. e.*, where an accused person spoke a foreign language, and, this being made known to the court, a petit jury was immediately and without the ordinary precept awarded, one-half of the jurors speaking English and one-half the alien's language. 1 Chit. Cr. Law, 508, 509; Hawkins, P. C., book 2, *c*. 41, § 1; 2 Hale, P. C. 260, 261; *Peter Cook's Case*, 13 How. St. Tr. 326, per TREBY, L. C. J.

Where, by reason of the silence of the statutes, the common-law requirement has been operative, or where the statute has expressly required a *venire* for the summoning of a grand jury, the weight of authority is against the power of courts to dispense with the writ. *People* v. *McKay*, 10 Johns. 212; *Clinton* v. *Englebrecht*, 13 Wall. 434; *State* v. *Dozier*, 2 Speers, 211, (1 Rich. 188.) The case of *Bird* v. *Georgia*, 14 Ga. 43, holds directly the contrary, but the court frankly state that their conclusion is in conflict with American authority. But the counsel for the United States have pressed the argument that since the passage of the act of 1879, (21 St. at Large, p. 43,) the writ of *venire facias* as a means of obtaining a grand jury would be a useless and vain process, and therefore may be regarded as no longer a legal prerequisite. The provisions of that statute are as follows:

"And that all such jurors, grand and petit, including those summoned during the session of the court, shall be publicly drawn from a box containing, at the time of each drawing, the names of not less than 300 persons, possessing the qualification prescribed in section 800 of the Revised Statutes, which names shall have been placed therein by the clerk of such court and a commissioner, to be appointed by the judge thereof, which commissioner shall be a citizen of good standing, residing in the district in which such court is held, and a well-known member of the principal party in the district in which the court is held opposing that to which the clerk may belong; the clerk and commissioner each to place one name in said box alternately, without reference to party affiliations, until the whole number required shall be placed therein. But nothing herein contained shall be construed to prevent any judge from ordering the names of jurors to be drawn from the boxes used by the state authorities in selecting jurors in the highest courts of the state."

This statute repeals the last clause of section 800, and the entire sections 801, 820, and 821. The last clause of section 800 and the entire section 801 contained special provision for the drawing of jurors in Pennsylvania, and sections 820 and 821 established as grounds of additional challenges the having participated in the rebellion. The Revised Statutes had compiled and re-enacted all the acts above re-

ferred to with reference to juries, including the act of 1846, which prohibited the summoning of a grand jury unless a *venire* had been ordered, and the provision of the act of 1789, which allowed that writ to issue from the clerk's office, and directed the manner of its service and return. In short, the portions of the statute repealed and those left in force seem to show on the part of congress not alone a purpose to leave unrepealed all the provisions relating to the *venire facias*, but the determination to make that purpose unmistakable. It meant to change and did change the manner of designating the names of persons who were to constitute the jurors; it meant to leave and did leave the manner of summoning the jurors to be accomplished by the *venire facias;* it meant to leave and did leave the manner of impaneling the jurors to the rules of the courts, which were to be modeled *in substance* after the state statutes from time to time in force. That act, it is to be observed, has required the United States courts to order the selection of the list of the grand or petit jurors to serve in the United States courts either by lot from the names selected by the jury commissioners to be appointed by the court and the clerk of the court, or from the box from which the jurors to serve in the courts of this state are drawn. If the latter method were adopted the *venire*, or a process in the nature of a *venire*, would be as necessary as ever, and the statute could hardly be held to have impliedly repealed a preceding one by establishing a method in the alternative, when if one of the alternative plans should be selected, it must be conceded, the need of the process should remain undiminished.

But even where, as in this case, the jurors are drawn from the number of those compiled by the commissioner and clerk, it seems to me the necessity for the *venire* continues. True, this court, in order to secure the utmost fairness, has gone beyond the requirements of the act of 1879, and by its rules requires that the drawing of the names shall be not only "publicly had," but shall be had in *open court,* and that each name, as drawn, shall be called aloud by the marshal and entered of record by the clerk upon the minutes of the court. But this does not dispense with a process upon which shall be a lawful return. The common-law *venire* commanded the sheriff to *cause to come* a certain number of jurors. This command included—*First,* the selection of the names, which was left to the sheriff's discretion, from the body of the county, from the class of men who were by law qualified; *secondly,* the summoning of the persons thus selected; and, *thirdly,* a return of the writ, with his doings un-

der it, whereby "he returned and delivered in" the jury to the court. Unless there be a return and a delivery in by the officer, there would be no record showing the identity of the persons appearing with the persons drawn. To my mind, the necessity of a return is increased rather than diminished by the act of 1879. That act is intended to exclude, so far as is possible, political bias in the formation of juries. To accomplish this, under checks and safeguards which the statutes deemed adequate, a clerk and a commissioner of antagonistic political views are to select the names, and are directed even in the order in which they are to place the names in the box, for they are required to deposit each a name *alternately*. Now if, after all this has been done with such absolutely equal share of action, in order that there may be a correspondingly-fair result, is it possible that the statute intended to deprive the court of all means of securing a service and "delivering in" which should be equally impartial? Of what avail the nice equipoise of party affiliation in the drawing if all might be defeated by the manner of summoning?

It seems to me that, if we must resort to inference, it is palpable that congress must have intended that a drawing so completely fair should be supplemented and made effective in the proceedings of the courts by a service which should be equally incapable of perversion, and which could be scrutinized by the public, and dealt with and severely enforced by the court. Such a service could be secured only by a return, which should be made under the penalties which are affixed to the official certificates of what has been done under judicial processes. Take the case of this very grand jury. Twenty-three names were drawn. Including those who appeared on the return and the adjourned return-day, seventeen presented themselves as grand jurors. In this case there were six absentees. In other cases there might be a far greater proportion absent. Without a return and a delivering in political bias might still determine who should be summoned and who should be omitted in the service, and the whole purpose of the enactment of the last statute might be frustrated. The most impartial drawing can be made with certainty to result in an unbiased array of actually-attending jurors only by means of process and return.

I think the necessity of the process, in order to effectuate the object of the statute, is clear. But if it were not, the statute itself being clear, implicit compliance with it would be equally obligatory. I think this follows from fundamental principles, which have become concentrated alike for what they have cost humanity and what they

are worth to humanity.   These principles are that laws tending to secure unprejudiced grand jurors must be considered as having been enacted, in part, for the protection of, and as being the source of, rights, to those accused of crimes, which are the subjects of indictment or presentment; that under all just governments, whatever the law-making power has established as a prerequisite for the ascertainment of guilt or innocence, cannot be abated one jot or tittle by those who sit to administer the law; that in criminal procedure, matters of form clearly prescribed by law must be held by courts to be matters of substance, for the reason alone that they have been prescribed and independent of any perceived utility; that especially is this true where laws are enacted and courts established under a constitution which provides that "no person shall be deprived of life, liberty, or property without *due process of law.*"

I think the rule No. 32 of this court shows that the objection is seasonably taken.   That rule provides that "no challenge to the array or exception to the *validity of any grand jury* shall be entertained unless made at or prior to the arraignment of the accused."   The arraignment includes the bringing the accused before the bar of the court, the reading to him the indictment, and entering his plea.   At the common law a challenge to the array seems to have included only exceptions to the panel on account of interest or favor on the part of the person who summoned the jury.   The objection here made is an exception to the array in the nature of a challenge, and falls within the rule, as it is an "exception to the validity of the grand jury." This rule extends the opportunity for raising this objection possibly beyond the time allowed by the laws of this state.   But the statute of the congress requires the courts of the United States, "by rules or order, to conform the impaneling of jurors, *in substance,* to the laws and usages relating to the state courts from time to time in force in the state."   The state statute is not adopted,—that is, the conformity is not wrought, *ipso facto,* by the existence of the state statute or state usage, but is effected by the action of the court through its rule or order; and the conformity need not be exact, but need be merely substantial.   This thirty-second rule is therefore a sufficient compliance with the statute, and controls the matter of the time when this objection may be interposed.

The motion to quash the indictment must prevail, and is allowed.